**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-cv-21827-MD**

**KAREN HUNTER JACKSON**,
Plaintiff,

v. **[JURY DEMAND]**

**CITY OF MIAMI GARDENS**, a political subdivision of the State of Florida, **RODNEY HARRIS**, sued in his individual capacity, **RICHARD ROBINSON**, sued in his individual capacity, **IVETTE RICHARDSON**, sued in her individual capacity, **EMMANUEL JEANTY**, sued in his individual capacity,
Defendants.

## AMENDED COMPLAINT

Plaintiff, **Karen Hunter Jackson**, files her complaint for damages and equitable relief and alleges:

## PARTIES

1. Plaintiff, **Karen Hunter Jackson**, is a Miami Garden resident.

2. Defendant, **City of Miami Gardens**, (sometimes referred to as the 'City') is a municipal entity organized pursuant to the laws of Florida. The City of Miami Gardens' Council is the legislative body that governs the City of Miami Gardens. As set by the City's Charter, the Council is comprised of the Mayor and six councilmembers. The City of Miami Gardens acts by and through its Council and the Mayor. The Mayor is the designated presiding officer at all Council Meetings when he is present.

3. Defendant, **Rodney Harris**, is the duly elected mayor of the City of Miami Gardens. Harris is being sued in his individual capacity.

4. Defendant, **Richard Robinson**, is a police officer with the City of Miami Gardens and was acting as the sergeant of arms at the public meeting at issue. Robinson is being sued in his individual capacity.

5. Defendant, **Ivette Richardson**, is a police officer with the City of Miami Gardens. Richardson is sued in her individual capacity.

6. Defendant, **Emmanuel Jeanty**, is a police officer with the City of Miami Gardens. Jeanty is sued in his individual capacity.

7. At all times relevant, Defendants acted under the color of statute, ordinance, regulation, custom, or usage of the laws of Florida.

8. All condition precedents have been satisfied.

## JURISDICTION & VENUE

9. This action is for legal and equitable relief brought pursuant to 42 USC § 1983 and 1988 regarding the violation of Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution.

10. Venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the Southern District of Florida.

## STATEMENT OF FACTS

### Miami Gardens and its Public Participation Policy

11. Located in northwestern Miami-Dade County, Florida, the City of Miami Gardens has an estimated population of 110,000. Officially incorporated on May 13, 2003, the City's formation was driven by residents seeking increased local control over zoning, policing, and community development. After a successful referendum, the City's charter created a mayor-council-manager government and gave it control over municipal services, budgeting, and land use.

12. In addition to defining the powers of self-governance, the Charter and city ordinances also specified the distinct role of the Mayor, the process for public participation, and the expected standards of decorum during public meetings.

13. The Mayor is the final policymaker when presiding over Council Meetings. City of Miami Gardens Charter § 2.1(A) (2003). As the presiding officer at Council Meetings, the Mayor has the singular authority to enforce decorum rules, terminate or bar speakers who violate rules, and conduct the order of the meeting. City of Miami Gardens, Fla., Ordinance No. 2003-07, § 2-50(a) (2003); Ordinance No. 2023-004-460, § 2-60(a), (f), (g) (2023). When the Mayor is present, no other person can decide who may speak or cannot speak at the Council Meetings, not even the Mayor's councilmembers. *Id*. Finally, the Mayor's decision to silence a speaker is non-reviewable. *Id*. at § 2-50(a). Therefore, the Mayor's role in silencing a speaker is that of a final policymaker in this context.

14. The public comment period during Council Meetings provides a formal opportunity for citizens to address the council. Each speaker is allotted two minutes to speak on a permissible topic, though the presiding officer (typically the Mayor) has discretion to grant additional time. *See* City of Miami Gardens, Fla., Ordinance No. 2003-07, § 2-50(a) (2003); Ordinance No. 2023-004-460, § 2-60(e)(2).

15. The Charter and ordinances define the scope of permissible topics that may be addressed during public comment period. According to the Charter:

> So far as the orderly conduct of public business permits, any interested person has the right to appear before the City Council or a City agency, board, or department for the presentation, adjustment, or determination of an issue, request, or controversy within the City's jurisdiction.

City of Miami Gardens Charter, Preamble § A(5) (2003), Ordinance No. 2023-004-460, § 2-60(a) (2023), reinforces this right, subject to narrow and inapplicable exceptions[1].

16. The ordinances prescribe the manner in which citizens must address the Council during the public comment period. All speakers—except city staff—are required to use the podium and audibly state their name, address, and whether they are representing themselves, a group, or a third party. *See* City of Miami Gardens, Fla., Ordinance No. 2003-07, § 2-50(a) (2003); Ordinance No. 2023-004-460, § 2-60(e)(1). The ordinances also prohibit direct personal remarks to Councilmembers, stating: "All remarks shall be addressed to the city council as a body and not to any member thereof." *Id*. at § 2-60(e)(2).

17. The ordinances further establish rules of decorum for the public comment period. They provide that: "Any person making personal, irrelevant, impertinent, or slanderous remarks or who becomes boisterous while addressing the city council shall not be considered orderly or observing decorum." *Id*. at § 2-60(f)(1). It continues: "If any person becomes too lengthy, abusive, obscene, disruptive or otherwise fails to comply [with] decorum rules," they may be removed or otherwise regulated. *Id*.

18. The sergeant-at-arms is tasked with enforcing decorum at Council Meetings and acts under the direction of the presiding officer. The ordinance provides: "The chief of police of the City of Miami Gardens or his/her designee shall serve as sergeant-at-arms at all meetings of

---

[1] "Any citizen shall be entitled to be heard concerning any matter within the scope of jurisdiction of the city council except for the following: (1) An official act that must be taken to deal with an emergency situation affecting the public health, welfare, or safety, if compliance with the requirements would cause an unreasonable delay in the ability of the board or commission to act; (2) An official act involving no more than a ministerial act, including, but not limited to, approval of minutes and ceremonial proclamations; (3) A meeting that is exempt from F.S. § 286.011; or (4) A meeting during which the board or commission is acting in a quasi-judicial capacity. This paragraph does not affect the right of a person to be heard as otherwise provided by law." City of Miami Gardens, Fla., Ordinance No. 2023-004-460, § 2-60(a) (2023).

the city council. Such person(s) shall carry out all lawful orders and instructions given by the presiding officer for maintaining order and decorum at the meetings." *Id*. at § 2-60(g).

**Incident Involving Community Activist Karen Hunter Jackson and Councilwoman Katrina Wilson**

19. Karen Hunter Jackson, a community activist and former candidate for the City of Miami Gardens Council, is well-known to the Mayor, Councilmembers, and employees. On Wednesday, March 26, 2025, during the public comment period, Ms. Hunter Jackson expressed concerns about a proposed resolution, initiated by Councilwoman Katrina Wilson, that aimed to increase councilmembers' term limits. Ms. Hunter Jackson was one of many residents who spoke out against this resolution.

20. When the resolution subsequently came up on the agenda, Councilwoman Wilson was given the floor. During her speech, she singled out Ms. Hunter Jackson, questioning her character. Councilwoman Wilson repeatedly referred to Ms. Hunter Jackson dismissively as "Karen," called her a "big girl," stated she was involved in "dirty politics," and suggested she had misled people regarding the resolution's purpose. Ms. Hunter Jackson was not given an opportunity to rebut these disparaging remarks during the meeting.

21. Councilwoman Wilson's outburst ultimately led the presiding officer to adjourn the meeting. Following the adjournment, Councilwoman Wilson reportedly continued her tirade in the hallways of City Hall, where she repeatedly called residents "idiots."

**Violation of First Amendment Rights at Council Meeting**

22. On April 9, 2025, the City held a scheduled council meeting. At the beginning of the public comment period, Mayor Harris had the clerk read the rules governing that session as indicated in the speakers' registration card.



Article II, Section 2-60 of the City of Miami Gardens Code entitled "Public Participation" provides that any person making personal, irrelevant, impertinent, or slanderous remarks or who becomes boisterous while addressing the City Council shall not be considered orderly or observing decorum. If any person becomes too lengthy, abusive, obscene, and/or disruptive or otherwise fails to comply with decorum rules, the presiding officer may:

- Issue a warning and provide an opportunity for the individual to conclude remarks in a decorous manner and within the designated time limit.
- Interrupt and terminate the individual from concluding their remarks.
- Bar the individual from further appearance before the City Council, unless or until permission to continue or again address the City Council is granted by a majority vote of the City Council.

Order shall be maintained. If any person refuses to obey the orders of the presiding officer and is declared out of order, the individual may be subject to removal by the Sergeant-At-Arms.

*Figure 1. Back of Registration Card for Public Comment Period.*

23. Given that Ms. Hunter Jackson had not been able to rebut Councilwoman Wilson's remarks in the prior meeting, she took this opportunity to speak specifically on the topic of decorum.

24. Mayor Harris recognized Ms. Hunter Jackson. Councilwoman Wilson got up from the dais when Ms. Hunter Jackson began to speak.

25. After recognition, the following exchange took place:

> **Ms. Hunter Jackson:** Good evening. Karen Hunter Jackson, 1420 northwest, 199th Street, Miami Gardens, Florida 33169. I'm speaking on my own behalf. I proudly call Miami Gardens home for 34 years. I'm here to speak about decorum, not just the word in your ordinance or our ordinance, but a standard every councilmember should uphold. The Council has applied our decorum ordinance inconsistently and arbitrarily.
>
> I spoke in opposition to the proposed third term special election. My remarks were not. My remarks were civil, not disrespectful, not personal, abusive, obscene or disruptive. I honored leaders like Dr. Martin Luther King Jr and the Prophet Moses who spoke truth to power. In response, Councilwoman Wilson publicly attacked me, repeatedly referring to me as Karen. She called me big girl, accused me of dirty politics.

Councilwoman Wilson used her position not for dialogue, but for personal attacks.

**Mayor Harris:** Ms. Ms. Jackson. Ms. Ms. Jackson. Ms. Jackson.

**Ms. Hunter Jackson:** That's not leadership it's bullying.

**Mayor Harris:** Ms. Jackson.

**Ms. Hunter Jackson:** Yes.

**Mayor Harris:** Address it to me.

**Ms. Hunter Jackson:** Worse, she hid behind council rules to avoid accountability. Councilwoman Wilson's conduct was egregious and unacceptable.

**Mayor Harris:** Ms. Jackson. Ms. Jackson. Ms. Jackson.

**Ms. Hunter Jackson:** Councilwoman Wilson. If you cannot handle respectful criticisms, you should step down.

**Mayor Harris:** Stop her. Stop her.

**Ms. Hunter Jackson:** I respectfully call on council to hold her accountable [mic cut off] and a resolution be passed to censure her.

26. During Ms. Hunter Jackson's speech, the Mayor directed Robinson and others to stop her. Robinson seized the microphone from Ms. Hunter Jackson (as shown in Figure 2) and disabled her audio. Following the Mayor's instructions, Robinson removed Ms. Jackson from the podium, and Richardson and Jeanty escorted her out of the chambers. Ms. Hunter Jackson spoke for less than the allotted two minutes and was denied the opportunity to finish her remarks.

27. Afterward, Councilwoman Wilson returned to the dais.



*Figure 2. Robinson is holding the microphone.*

**The Public Participation Policy and its Arbitrary Application Violate the Constitution**

28. The City's Public Participation Policy is facially unconstitutional under the First Amendment.

29. First, the policy prohibits citizens from directly addressing individual councilmembers during public comment. Specifically, it mandates that "all remarks shall be addressed to the city council as a body and not to any member thereof," thereby barring citizens from referring to councilmembers by name. The Supreme Court has recognized that criticism of public officials—including direct, personal address—is core political speech protected by the First Amendment. By forbidding citizens from naming or directly addressing individual officials, the policy suppresses public accountability and impairs the right to petition elected representatives.

30. Second, the policy uses vague and overbroad language to restrict speech, prohibiting "personal… remarks" and "abusive" speech without providing any definitions in the City's Charter or ordinances. This lack of clarity renders the policy unconstitutionally vague, giving officials excessive discretion to silence speech they disfavor. As a result, citizens are left

uncertain about what speech is permitted, leading to a chilling effect on constitutionally protected expression.

31. Third, the policy constitutes a content-based restriction on speech. Its prohibitions on "personally directed" remarks are aimed at the content of the speaker's message—particularly critical or dissenting speech targeting public officials. Content-based regulations are presumptively unconstitutional. The City has not identified a compelling governmental interest sufficient to justify such censorship. The policy broadly prohibits all direct criticism of officials, rather than targeting truly disruptive conduct such as threats, obscenity, or repeated interruptions.

32. Finally, the policy imposes a substantial burden on protected political speech. Prohibiting citizens from naming or criticizing individual councilmembers strikes at the heart of the First Amendment, which safeguards the right to hold public officials accountable and to petition them for redress. A categorical ban on naming officials not only discourages dissent but also insulates elected officials from the very scrutiny democratic debate is meant to promote. This prohibition undermines the "uninhibited, robust, and wide-open" discourse that is fundamental to a free society.

33. The policy is unconstitutional as applied to Ms. Hunter Jackson. The City's enforcement of its Public Participation Policy against Ms. Hunter Jackson was arbitrary and unconstitutional. Ms. Hunter Jackson was removed from the meeting solely because she repeatedly referred to Councilwoman Wilson by name during her remarks. This selective application of the policy violates the First Amendment's guarantee of viewpoint neutrality.

34. Critically, Defendants permitted other speakers to address councilmembers by name when offering praise or gratitude, yet imposed no consequences. For example:

- Resident Francis Ragoo thanked Councilwoman Powell by name for her monetary contributions to the community.
- Resident Christine Malcolm explicitly referenced Vice Mayor Stephens while praising his sponsorship of the "Day on the Hill" event.
- Resident Charity Mathis thanked Vice Mayor Stephens, Councilwoman Wilson, and Councilwoman Baskin by name.
- Resident Brenda Martin Providence lauded Councilwoman Linda Julian by name for her work with Miami Gardens children.

35. In all these instances[2], Defendants allowed the use of councilmembers' names without issuing warnings or enforcing the decorum policy. This inconsistency demonstrates that the rule was applied discriminatorily to suppress Ms. Hunter Jackson's criticisms while permitting favorable mentions of officials.

36. Defendants selectively enforced the policy against critical speech. This arbitrary enforcement is further evidenced by its tolerance of other speakers who criticized Councilwoman Wilson's March 26, 2025 conduct – so long as they avoided using names. For example:

- Resident Christine Malcolm condemned Councilwoman Wilson's decision to call residents "idiots" (though she did not mention Wilson by name).
- Resident Dr. James Davis criticized Councilwoman Wilson's conduct (he too did not mention Wilson by name).
- Resident Brenda Martin Providence echoed concerns about the March 26 incident without naming Councilwoman Wilson.

[2] While Ms. Hunter Jackson has cited a single meeting to demonstrate this inconsistency, the City's selective enforcement of the decorum policy reflects a longstanding, systematic pattern of suppressing disfavored speech.

37. Despite addressing the same substantive criticisms as Ms. Hunter Jackson (i.e., Wilson's conduct), these speakers were permitted to finish their remarks uninterrupted. Defendants' disparate treatment reveals that the policy was weaponized to silence Ms. Hunter Jackson's direct criticism of Councilwoman Wilson while allowing indirect critiques of the same conduct. This constitutes unconstitutional viewpoint discrimination.

38. Due to the Defendants' actions, Ms. Hunter Jackson experienced damages. She now feels uncomfortable exercising her First Amendment rights and has endured emotional distress and embarrassment.

## COUNT ONE,
## RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983 FACIAL CHALLENGE TO THE PUBLIC PARTICIPATION POLICY AGAINST THE CITY OF MIAMI GARDENS

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 38.

40. The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. The First Amendment embodies "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). The government may not silence speech because it criticizes government officials or employees directly.

41. The Eleventh Circuit has held that public comment periods at municipal meetings, like the one in this case, are considered limited public forums. *McDonough v. Garcia*, 116 F.4th 1319, 1328 (11th Cir. 2024). During the public comment period, the government may restrict

content neutral speech if the restriction is reasonable in light of the purposes served by the meeting and may not discriminate on the basis of viewpoint. *Id.* at 1329. However, once the government has opened a limited forum, the government "must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

42. First Amendment protections extend to public speech at city council meetings, by operation of the Fourteenth Amendment. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) ("[T]he Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable against the States.").

43. In this case, the public comment period is a limited forum for addressing Miami Gardens concerns. Criticism of city officials, including councilmembers, is germane to the business of the City—regardless of whether councilmembers wish to hear such criticism directed at them by name or not. The First Amendment forbids excluding these viewpoints from council meetings' public comment period.

44. The Public Participation Policy's prohibition on personally addressing councilmembers; and on speech deemed "personally directed" or "abusive," violate the First Amendment right of free speech on its face by impermissibly discriminating against speech on the basis of viewpoint. These prohibitions are not designed to confine the forum to the limited and legitimate purposes for which it was created. Rather, the policy suppresses ideologies, views, and opinions properly before the City.

45. By enforcing the policy, the City, under color of law, deprives Plaintiff (and similarly situated individuals) of the right to free speech in violation of the First Amendment to the United States Constitution. Accordingly, Plaintiff has suffered harm in violation of 42 U.S.C. § 1983 and is entitled to: (1) compensatory damages; (2) declaratory relief; (3) preliminary and

permanent injunctive relief prohibiting the continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices; and (4) an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

COUNT TWO,
RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983 AS-APPLIED CHALLENGE TO THE PUBLIC PARTICIPATION POLICY AGAINST THE CITY OF MIAMI GARDENS.

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 38.

47. Ms. Hunter Jackson's speech at the City's council meeting was protected by the First Amendment.

48. At no point was Ms. Hunter Jackson's speech terminated or censored due to exceeding time limits, irrelevance, or an actual disruption of decorum. Instead, the City silenced her because it disagreed with the content and viewpoint of her speech. The First Amendment prohibits such viewpoint discrimination: "The public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (internal quotation marks omitted).

49. As applied to Ms. Hunter Jackson, the City's Public Participation Policy was enforced in a discriminatory and arbitrary manner. During the same meeting, speakers who praised the Councilmembers were permitted to exceed time limits and were not interrupted. In contrast, Ms. Hunter Jackson was removed mid-comment when she criticized Councilmember Wilson by name—despite the fact that she was addressing a permissible topic: governmental misconduct. This selective enforcement constitutes impermissible viewpoint discrimination in violation of the First Amendment.

50. The City's vague prohibitions on "abusive," and "personal" remarks are unconstitutional as applied to Ms. Hunter Jackson. These undefined terms give officials unchecked

discretion to suppress speech based on disagreement with the speaker's viewpoint. In Ms. Hunter Jackson's case, the policy was enforced solely because her speech criticized an elected official by name—an essential component of political accountability and protected expression. Other speakers who discussed the same councilmember or topic without naming her were allowed to continue speaking uninterrupted, further evidencing discriminatory enforcement.

51. As applied to Ms. Hunter Jackson, the City's prohibition on naming officials or making "personal" comments functions as a de facto ban on holding officials publicly accountable. In a public comment forum designed to address City governance, discussion of specific individuals—particularly elected officials—is both relevant and necessary. Barring such references is not reasonable in light of the purpose of the forum and violates the First Amendment.

52. By enforcing the Public Participation Policy in this arbitrary and discriminatory manner, Defendants, acting under color of state law, deprived and continue to deprive Ms. Hunter Jackson of her rights to free speech under the First and Fourteenth Amendments. Accordingly, Plaintiffs seek relief under 42 U.S.C. § 1983, including nominal damages, declaratory judgment, preliminary and permanent injunctive relief against further enforcement of the unconstitutional policies and practices, and an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT THREE,

RIGHT OF FREE SPEECH, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983 UNLAWFUL RESTRAINT ON FREE SPEECH, AGAINST CITY OF MIAMI GARDENS, RODNEY HARRIS, RICHARD ROBINSON, IVETTE RICHARDSON, EMMANUEL JEANTY.

53. Plaintiff realleges and incorporates by reference paragraphs 1 through 38.

54. Plaintiff sues Defendants for the violation of her constitutional rights guaranteed under the First Amendment. Defendants deprived Plaintiff of her First Amendment right to engage in protected speech, as applied to state actors through the Fourteenth Amendment. *See Halleck*, 139 S. Ct. at 1928.

55. Defendants' restraint on Ms. Hunter Jackson's speech—specifically, the Mayor's directive to police to stop her from speaking and the officers' compliance with that unlawful order—was unconstitutional under the First Amendment because it was neither content-neutral nor reasonable.

56. The restraint was content-based. During the public comment period, Ms. Hunter Jackson spoke on a permissible topic: a council member's misconduct. When she identified Councilwoman Wilson by name, Mayor Harris directed the officers to "Stop her. Stop her." Robinson cut off her mic, and removed her from the podium. Richardson and Jeanty then escorted her out of the chambers. This sequence shows that Defendants targeted her speech based on its content. Other speakers were allowed to criticize Councilwoman Wilson, but only if they avoided using her name. By censoring criticism of a public official's conduct—an otherwise permitted topic—Defendants imposed a content-based restriction in violation of the First Amendment.

57. Alternatively, the restriction on Ms. Hunter Jackson's speech violated the Constitution because it was unreasonable, either due to discrimination against the speaker's viewpoint or because it was imposed in an arbitrary and haphazard manner.

58. First, Defendants' restraint targeted Ms. Hunter Jackson's viewpoint: aiming to silence Ms. Hunter Jackson's criticism of Councilwoman Wilson's behavior during the March 26, 2025, incident. Other speakers addressing the same topic without naming her were permitted to proceed, confirming that Defendants acted out of disagreement with Ms. Hunter Jackson's message, not concerns about decorum or relevance. Defendants also permitted speakers to praise councilmembers by name (e.g., thanking Councilwoman Powell for contributions) but silenced Ms. Hunter Jackson for criticizing Councilmember Wilson. This disparate treatment underscores the policy's use as a tool for viewpoint discrimination.

59. Second, Defendants' restraint on Ms. Hunter Jackson's speech was unreasonable because it was arbitrary and lacked any objective or consistently applied standard. Defendants failed to articulate a clear rule explaining why her comments were deemed inappropriate or provide a constitutional basis for silencing her.

60. In a designated public forum intended for commentary on government conduct, referring to councilmembers by name is entirely appropriate. Criticism of an official's actions necessarily involves identifying the official. Terms like "personal" or "abusive" are unconstitutionally vague and invite arbitrary enforcement, granting officials unchecked discretion to suppress speech based on its content. Simply naming a public official while criticizing their conduct is not "abusive"—it is a core component of democratic accountability. Defendants cannot lawfully silence such speech simply because it includes pointed criticism or makes officials uncomfortable.

61. Censoring Ms. Hunter Jackson's remarks based on Defendants' subjective view of what is "personal" or "abusive" invites arbitrary enforcement. At the same meeting, other speakers were allowed to address councilmembers by name when offering praise and were permitted to discuss the same topic—Councilwoman Wilson's misconduct—without interruption. There was no discernible standard distinguishing Ms. Hunter Jackson's remarks from those of other speakers. This vagueness violates the First Amendment by chilling protected speech.

62. The City is subject to *Monell* liability based on Mayor Harris's conduct as a final policymaker in censoring Hunter Jackson's speech during the public comment period, in violation of the First Amendment. Under the City of Miami Gardens' Charter and Ordinances, the Mayor is the final policymaker when presiding over City Council meetings. The Mayor has sole authority to enforce decorum, determine who may speak, and control the meeting's proceedings. These

decisions are not subject to review by other council members. Accordingly, Mayor Harris acted as a final policymaker when he directed the removal of Ms. Hunter Jackson prior to her completing her remarks, thereby satisfying the *Monell* standard. *See Mandel v. Doe*, 888 F.2d 783, 792–94 (11th Cir. 1989); *Martinez v. City of Opa–Locka*, 971 F.2d 708, 713–15 (11th Cir. 1992).

63. Mayor Harris is also individually liable because he personally directed Ms. Hunter Jackson's removal based on the content of her speech. As the presiding officer, he gave the order that triggered the constitutional violation. Government officials are individually liable for their own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("each Government official… is only liable for his or her own misconduct").

64. Officers Robinson, Jeanty, and Richardson are individually liable for executing Mayor Harris's unlawful order. By physically removing Ms. Hunter Jackson and preventing her from completing her speech, they directly and actively participated in the constitutional violation. Their actions establish the necessary causal connection to Ms. Hunter Jackson's First Amendment deprivation.

65. As a direct result of Defendants' unconstitutional actions, Plaintiff suffered compensable harm, including deprivation of constitutional rights, emotional distress, humiliation, and mental anguish.

**PRAYER**

Wherefore, **Karen Hunter Jackson**, demands the following relief against Defendants:

a. Compensatory general and special damages in an amount in accordance with proof;

b. Consequential damages;

c. Exemplary damages, where supported by law;

d. Reasonable attorneys' fees and expenses of litigation, including those fees permitted by 42 U.S.C. § 1988;

e. Prejudgment and post-judgment interests where permitted by law;

f. Punitive damages;

g. Nominal damages;

h. Costs of suit and interest accrued incurred herein; and

i. Injunctive relief;

j. Other forms equitable and/or legal relief the Court deems just or proper.

Respectfully submitted by,
PIERRE SIMON
Attorneys for Plaintiff
600 Southwest 4th Avenue,
Fort Lauderdale, Florida 33315

By: s/ Faudlin Pierre
Faudlin Pierre, Esq.
FBN. 56770
fplaw08@yahoo.com
(305) 336-9193