**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 1:25-cv-21827-MD

**KAREN HUNTER JACKSON**,
Plaintiff,

v.

**CITY OF MIAMI GARDENS**, a Florida municipal corporation; **RODNEY HARRIS**, in his individual capacity; and **RICHARD ROBINSON**, in his individual capacity,
Defendants.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Karen Hunter Jackson moves for partial summary judgment on liability as to Counts I–III against the City of Miami Gardens, Mayor Rodney Harris, and Officer Richard Robinson, and requests declaratory and injunctive relief.

## I. Introduction

Defendants have conceded this case. The City's final policymaker, Mayor Harris, testified that Ms. Hunter Jackson was silenced during a public comment period for no other reason than uttering a councilmember's name in violation of its Public Participation Policy. SMF ¶ 35. That admission dooms the defense: both the policy and its execution were unconstitutional. The City itself confirmed this reality when it amended the ordinance to explicitly state that the provisions enforced against Ms. Hunter Jackson were "facially unconstitutional as applied and a violation of the First Amendment." SMF ¶¶ 57-58.

This admission squares perfectly with binding case law. In *Moms for Liberty—Brevard County, FL v. Brevard Public Schools*, the Eleventh Circuit invalidated materially identical prohibitions on "personally directed" and "abusive" remarks, as well as rules preventing speakers from "addressing individual members." 118 F.4th 1324, 1333–37 (11th Cir. 2024). Because

Sections 2-60(e)(2) and 2-60(f)(1) contain these exact, unconstitutional restrictions, Plaintiff is entitled to partial summary judgment as a matter of law.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff's claims arise under 42 U.S.C. § 1983. To prevail under § 1983, a plaintiff must show "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).

The parties do not dispute that Defendants acted under color of state law. SMF ¶ 5. Accordingly, the sole issue before the Court is whether the undisputed record establishes a constitutional violation under Counts I, II, and III. To evaluate these claims, the Court must apply the First Amendment framework governing limited public forums.

## III. Constitutional Framework

The public comment periods at city council meetings are limited public forums. *McDonough v. Garcia*, 116 F.4th 1319, 1329 (11th Cir. 2024). To restrict speech in a limited public forum consistent with the First Amendment, the government's restrictions must be **viewpoint-neutral** and **reasonable**. *Id.*

A restriction is **reasonable** only if it aligns with the forum's purpose. *Moms for Liberty—Brevard Cnty., FL v. Brevard Pub. Schs.*, 118 F.4th 1324, 1332 (11th Cir. 2024). To pass muster, such purpose-based restrictions must be "wholly consistent with the government's legitimate interest in preserving the property for the use to which it is lawfully dedicated," and the prohibited speech must be "naturally incompatible" with that purpose. *Id.* (internal quotations omitted).

Conversely, a restriction is **unreasonable** if it is either **viewpoint-based** or enforced in an **arbitrary and haphazard manner**. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1240 (11th Cir. 2019).

A **viewpoint-based restriction** occurs when the government "goes beyond mere content-based discrimination and regulates speech based upon agreement or disagreement with the particular position the speaker wishes to express." *Id.* at 1241.

**Arbitrary and haphazard enforcement** lacks objective standards, invites inconsistent application, and vests excessive discretion in public officials.. *See Minn. Voters All. v. Mansky*, 585 U.S. 1, 16, 21-22 (2018) (holding that the government must articulate a "sensible basis for distinguishing what may come in from what must stay out" guided by "objective, workable standards"). Even a facially neutral policy is constitutionally unreasonable if it grants officials "unbridled discretion" or is "inconsistently enforced." *See Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1256 (11th Cir. 2004); *Cambridge Christian*, 942 F.3d at 1243.

## IV. Analysis

### a. Count I — The Public Participation Policy Is Facially Unconstitutional Under Binding Eleventh Circuit Precedent.

The City's Public Participation Policy is facially unconstitutional. Three of its specific provisions—the "address-the-body" rule, the "personally directed" prohibition, and the "abusive" remarks prohibition—are materially identical to rules the Eleventh Circuit struck down in *Moms for Liberty*. 118 F.4th at 1333–38. Indeed, the City Council has already legislatively conceded that these exact provisions are "facially unconstitutional." SMF ¶¶ 57–58.

A policy that lacks workable standards and guidance is facially invalid by definition because its constitutionality turns entirely on the "vagueness and imprecision" of the text itself. *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1351 (11th

Cir. 2024). Alternatively, a policy granting officials unbridled enforcement discretion is an independent ground for facial invalidation. *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130–33 (1992).

Prior to its recent amendment, the City's policy explicitly mandated:

> All remarks shall be addressed to the city council as a body and **not to any member thereof**. . . . Any person making **personal**, irrelevant, impertinent, or slanderous remarks . . . [or who] becomes too lengthy, **abusive**, obscene, disruptive or otherwise fails to comply [with] decorum rules [.]."

Ordinance No. 2023-004-460, § 2-60(e)(2), (f)(1) (emphasis added); SMF ¶¶ 7–8. Under controlling Eleventh Circuit precedent, each of these bolded restrictions is facially unconstitutional. They are analyzed in turn below.

**i. Section 2-60(e)(2) — The "Address-the-Body" Rule is Facially Unconstitutional.**

Section 2-60(e)(2) commands that "[a]ll remarks shall be addressed to the city council as a body and not to any member thereof." SMF ¶ 7. Both the text of this rule and its enforcement history establish that it lacks any objective, workable standard.

Indeed, Mayor Harris—the City's final policymaker for decorum enforcement—explicitly conceded that the City's enforcement of this policy from 2023 through 2025 resulted in countless examples of arbitrary and inconsistent enforcement. SMF ¶¶ 14–18, 51. The record heavily bears this out. At the same April 9, 2025 meeting where Ms. Hunter Jackson was silenced for uttering a name, four other speakers addressed councilmembers by name with complete impunity. SMF ¶¶ 40–43. This pattern of erratic enforcement was standard practice; across multiple council meetings spanning 2023 to 2025, numerous other speakers regularly named councilmembers without consequence. SMF ¶¶ 47–50. Despite this haphazard execution, the Mayor testified that the rule strictly prohibits a speaker from using a name, "regardless if it's criticism or praise." SMF ¶¶ 10, 45.

This is precisely the type of standardless restriction the First Amendment forbids. The Eleventh Circuit struck down a materially identical rule in *Moms for Liberty*, holding it facially unconstitutional because enforcement was "so inconsistent that it is impossible to discern the standard used to assess which speech was permitted at any given meeting." 118 F.4th at 1335–36. As the court observed, permitting speech on some days but not on others without a credible explanation "is the essence of arbitrary, capricious, and haphazard—and therefore unreasonable—decisionmaking." *Id.* at 1336.

That holding squarely controls here. In fact, the City itself has already formally conceded to this violation. On February 25, 2026, the City Council unanimously repealed Section 2-60(e)(2) specifically "in light of" *Moms for Liberty*. SMF ¶¶ 57–58. In doing so, the City explicitly conceded in its legislative findings that the very provisions weaponized against Plaintiff were "facially unconstitutional as applied and a violation of the First Amendment." *Id.* This formal legislative admission is dispositive. Section 2-60(e)(2) is facially invalid as a matter of law.

**ii. Section 2-60(f)(1) — The "Personally Directed" Prohibition is Facially Unconstitutional.**

Section 2-60(f)(1) provides that "any person making personal [] remarks . . . shall not be considered orderly or observing decorum." SMF ¶ 8. The undisputed record establishes that this provision is a textbook example of an unbridled and standardless restriction on speech.

Three admissions doom the rule. First, the City Code leaves the operative term—"personal"—entirely undefined. SMF ¶ 9. Second, Mayor Harris's authoritative interpretation provides no objective guidance. He testified that "personal" simply means "saying a person's name" and applies "regardless if it's criticism or praise." SMF ¶¶ 10, 45. Third, the City's Rule 30(b)(6) corporate representative admitted that the policy has "no objective standard" for

enforcement, testifying instead that the only guiding principle is "to ensure that our council meetings are moving forward and in order." SMF ¶ 11.

Although maintaining order during a meeting is a legitimate governmental interest, it is not an objective standard. A policy that relies entirely on a presiding official's subjective definition of "order," without any meaningful limiting principles, invites the very type of arbitrary and capricious decisionmaking the First Amendment prohibits. *See Mansky*, 585 U.S. 1, 21 (holding that speech restrictions must be guided by "objective, workable standards").

The Eleventh Circuit struck down a materially identical "personally directed" prohibition in *Moms for Liberty* precisely because the government failed to define the phrase, leaving "no boundaries beyond the presiding officer's real-time judgment about who to silence." 118 F.4th at 1337. The same constitutional defect exists here. Accordingly, the City's prohibition on "personal" remarks is facially unconstitutional. *See id*. at 1338.

**iii. Section 2-60(f)(1) — The "Abusive" Remarks Prohibition is Facially Unconstitutional.**

Section 2-60(f)(1) authorizes the presiding officer to interrupt or remove any speaker who "becomes too [] abusive." SMF ¶ 8. Like the "personally directed" prohibition, this restriction operates without any objective standards. SMF ¶ 11. The term "abusive" is undefined anywhere in the City Code, Charter, or related policies. SMF ¶ 9. Compounding that ambiguity, the City's Rule 30(b)(6) corporate representative admitted that whether speech is "abusive" is subjective and may mean "different things to different people." SMF ¶¶ 11, 60.[1]

The Eleventh Circuit has already held that materially identical restrictions on "abusive" speech are facially unconstitutional. In *Moms for Liberty*, the court explained that an undefined

---

[1] Instead of curing this constitutional defect, the City's February 2026 amendment retained the term "abusive" and added "personally directed abusive" as a new prohibited category, compounding the constitutional violation. SMF ¶¶ 56–60.

prohibition on "abusive" speech functions as an unconstitutional "undercover prohibition on offensive speech." 118 F.4th 1324, 1334–35 (11th Cir. 2024). Because "[g]iving offense is a viewpoint," such restrictions impermissibly require citizens to engage in "'happy-talk,' permitting a speaker to give positive or benign comments, but not negative or even challenging ones." *Id.* (quoting *Matal v. Tam*, 582 U.S. 218, 243 (2017)). The court therefore held that "[b]ecause the government may not burden the speech of others in order to tilt public debate in a preferred direction, the Board's policy on 'abusive' speech is facially unconstitutional." *Id.* at 1335.

The same constitutional defect exists here. By conditioning a citizen's right to speak on a presiding official's subjective reaction to whether speech is "abusive," the City's policy vests unbridled discretion in government officials and impermissibly suppresses protected speech based on viewpoint. Accordingly, the City's prohibition on "abusive" remarks is facially unconstitutional.

**b. Count II — The Policy's Enforcement Against Ms. Hunter Jackson Was Unconstitutional As Applied.**

The City unconstitutionally applied the Public Participation Policy to Ms. Hunter Jackson's speech. *See Rubenstein v. Florida Bar*, 72 F. Supp. 3d 1298, 1309 (S.D. Fla. 2014) (an as-applied challenge contests whether a policy is unconstitutional "as it has been applied to a litigant's particular speech activity"). The enforcement fails as a matter of law because Mayor Harris stopped, muted, and removed Ms. Hunter Jackson solely for identifying a councilmember by name during a critical remark, while leaving praise-by-name entirely undisturbed. Such selective enforcement is the essence of viewpoint discrimination.

Ms. Hunter Jackson was properly recognized to speak during the public-comment period and addressed decorum—the very subject matter governed by Section 2-60. SMF ¶¶ 25–27. Mayor Harris admitted that, for the first 48 seconds of her remarks, Ms. Hunter Jackson complied with

every applicable rule and was not abusive, slanderous, impertinent, irrelevant, boisterous, or disruptive. SMF ¶¶ 27–28. She used no profanity, did not yell, did not threaten anyone, and posed no safety concern. SMF ¶¶ 28–29. Her criticism of an elected official constitutes core political speech protected by the First Amendment. *See Houston Community College System v. Wilson*, 595 U.S. 468, 478 (2022) ("Elected representatives are expected to shoulder a degree of criticism about their public service . . . .").

Mayor Harris—the City's final policymaker for meeting enforcement—testified that the sole reason Ms. Hunter Jackson's microphone was muted and she was removed was because "she kept saying Councilwoman Wilson's name." SMF ¶¶ 14–18, 35, 37. The first time Plaintiff used Wilson's name, Mayor Harris took no action and gave her a "freebie." SMF ¶¶ 29–30. The second time, he ordered security to "Stop her. Stop her." SMF ¶¶ 31–32. The City Clerk similarly testified that, but for Ms. Hunter Jackson naming Councilwoman Wilson, Ms. Hunter Jackson would have been allowed to complete her remarks. SMF ¶¶ 36, 38. The contemporaneous record contains no other justification. Mayor Harris invoked no specific policy provision on the record, and Officer Robinson confirmed that no legal or constitutional basis for the order was articulated at the time. SMF ¶¶ 37, 39.

Only after litigation began did the City attempt to recast Ms. Hunter Jackson's remarks as "irrelevant, impertinent, and slanderous," and "abusive, obscene, and disruptive." SMF ¶ 38. That post hoc justification fails for three independent reasons. First, those characterizations appear nowhere in the contemporaneous record. SMF ¶¶ 35, 37. Second, they are directly contradicted by Mayor Harris's sworn testimony that Ms. Hunter Jackson was none of those things. SMF ¶¶ 27–28. Third, the City applied the rule inconsistently during the very same meeting by permitting materially similar speech from other speakers without interruption. SMF ¶¶ 40–44.

The April 9, 2025 meeting demonstrates blatant viewpoint discrimination. Although the City claims the rule applies "regardless if it's criticism or praise," SMF ¶ 45, the record shows that praise-by-name was routinely permitted while criticism-by-name was punished. Francis Ragoo praised Councilwoman Powell by name without interruption. SMF ¶ 43. Christine Malcolm named Vice Mayor Stephens and discussed the same underlying conduct Ms. Hunter Jackson was prohibited from addressing, yet she was allowed to continue speaking. SMF ¶ 40. Brenda Martin Providence named Councilwoman Julien, and Charity Mathis named three separate councilmembers during a single comment; neither was interrupted. SMF ¶¶ 41–42. By contrast, Dr. James Davis criticized Councilwoman Wilson's conduct without explicitly naming her and was permitted to finish his remarks. SMF ¶ 44. Mayor Harris admitted that the only material difference between Ms. Hunter Jackson's speech and Dr. Davis's speech was Ms. Hunter Jackson's use of Wilson's name. *Id*.

Ms. Hunter Jackson is the only speaker the City Clerk could recall ever being forcibly removed from the podium based on a decorum determination. SMF ¶ 46. The undisputed record further shows that the City selectively enforced the Policy against Ms. Hunter Jackson because of the viewpoint she expressed while permitting materially similar speech from other speakers. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) (Holding viewpoint discrimination is "an egregious form of content discrimination" that is especially offensive to the First Amendment). Regardless of whether Ms. Hunter Jackson's speech was labeled personal or abusive, the City unconstitutionally weaponized its policy to silence her criticism of an elected official. Ms. Hunter Jackson is therefore entitled to summary judgment on Count II.

**c. Count III — Mayor Harris and Officer Robinson Unlawfully Restrained Plaintiff's Speech, and the City Is Liable Under *Monell*.**

The Court's prior order resolved every doctrinal question raised by Count III. Order [ECF No. 48] at 9–15. The summary judgment record now converts the allegations that sustained Count III into undisputed facts, anchored by Defendants' own sworn admissions. Because Ms. Hunter Jackson has conclusively shown that the policy's enforcement violated the First Amendment (*see supra*), she is entitled to judgment on liability against all Defendants. This liability applies equally to the City, Mayor Harris, and Officer Robinson, as the undisputed record confirms that each entity and individual played a distinct role in the constitutional deprivation.

**i. Individual Liability**

Individual liability under 42 U.S.C. § 1983 requires an affirmative causal connection between a defendant's actions and the constitutional deprivation. *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982). This inquiry focuses directly on the specific duties and discretionary acts of each individual officer. *Id.* Accordingly, an official is liable where he personally participates in the injury and independently exercises his discretion to restrict protected speech. *See Weinstein v. City of N. Bay Vill.*, 977 F. Supp. 2d 1271, 1281 (S.D. Fla. 2013).

**1. Mayor Harris Personally Directed the Constitutional Violation.**

Individual liability attaches to Mayor Harris because he personally directed and orchestrated the constitutional deprivation. The City admits Mayor Harris was the presiding officer on April 9, 2025, and "possesses final authority during Council meetings to enforce the Public Participation Policy." SMF ¶¶ 14–18. Mayor Harris admits the enforcement of decorum "stops with" him and that no councilmember can override his decision. SMF ¶ 19. He admits he twice ordered "Stop her. Stop her". SMF ¶¶ 32–34, 39. And he admits—under oath—that the sole basis for the entire enforcement action was that "she kept saying Councilwoman Wilson's name." SMF ¶ 35. The City Clerk corroborates: but for naming Wilson, Plaintiff would have been allowed to

finish. SMF ¶ 36. No contemporaneous record reflects any other basis for the restraint. SMF ¶¶ 35, 37.

This Court has already held that these very allegations "sufficiently make out a claim of a First Amendment violation" against Mayor Harris. Order [ECF No. 48] at 13. The summary-judgment record converts those allegations into stipulated facts. Mayor Harris is individually liable as a matter of law.

**2. Officer Robinson Independently Restrained Plaintiff's Speech.**

This Court previously noted that Mayor Harris did not explicitly order Officer Robinson to shut off the microphone and remove Ms. Hunter Jackson; instead, Officer Robinson independently "chose to take the heavy-handed approach of immediately silencing her." Order [ECF No. 48] at 12. Because he "could have plausibly carried out Mayor Harris's instructions in a manner that may not have infringed Ms. Hunter Jackson's rights," *id.*, the undisputed record now confirms that Officer Robinson's own discretionary choices proximately caused the constitutional injury.

Officer Robinson testified that he approached the podium, took the microphone, and pressed the button that cut off the audio while Plaintiff was still speaking. SMF ¶ 33. He further testified that Mayor Harris did not directly order him to mute Ms. Hunter Jackson's microphone; he made that decision himself because her speech was being broadcast in the chamber. SMF ¶ 34. Officer Robinson also admitted that the Mayor gave no constitutional or policy-based justification for the command and that he did not consider whether the order was lawful before carrying it out. SMF ¶ 37.

Rather than issuing a verbal warning, requesting that Plaintiff redirect her remarks, or utilizing less restrictive means to maintain order, Officer Robinson chose to immediately extinguish her speech. His intentional, independent actions supply the requisite "affirmative causal

connection" to the First Amendment violation. *See Williams*, 689 F.2d at 1381. Because he exercised independent judgment to physically censor core political expression in a public forum, Officer Robinson is individually liable as a matter of law.

**ii. *Monell* Liability.**

The City is directly liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Mayor Harris acted as the final policymaker when he silenced Plaintiff. Municipal liability attaches under 42 U.S.C. § 1983 when a single unconstitutional decision is made and executed by an official who possesses final policymaking authority in that specific area of governance. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

The City has admitted *Monell* liability through its sworn admissions. Specifically, the City admits that under City Charter § 2.1 and Code § 2-50, Mayor Harris "possesses final authority during Council meetings to enforce the Public Participation Policy." SMF ¶ 14. The City further concedes that "when the Mayor serves as Presiding Officer, the Mayor is the City official with final policymaking authority for enforcement" of the policy. SMF ¶ 16. Because these enforcement decisions "take effect immediately... without any prior approval," SMF ¶ 17, and are treated as binding municipal policy unless formally overruled by the Council, SMF ¶ 18, the Mayor's unlawful restraint of Plaintiff's speech represents the official policy of the City of Miami Gardens.

Accordingly, the City is liable under *Monell* as a matter of law.

**iii. Qualified Immunity Does Not Apply.**

Mayor Harris and Officer Robinson are not entitled to qualified immunity because their unlawful restraint of Ms. Hunter Jackson's speech violated clearly established First Amendment law. To invoke qualified immunity, a government official must show he acted within his

discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The burden then shifts to the plaintiff to show the official violated a constitutional right clearly established by controlling Supreme Court, Eleventh Circuit, the state's supreme court precedent. *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). A right is clearly established when a broader legal principle governs the conduct or a materially similar case provides fair warning. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

This Court has already rejected qualified immunity at the pleadings stage, holding that *Moms for Liberty* provided "fair warning" that Mayor Harris and Officer Robinson's conduct was unlawful. Order [ECF No. 48] at 14–15. The undisputed summary judgment record reinforces it. Mayor Harris admitted the City's historical application of the decorum policy resulted in "countless examples of arbitrary and inconsistent enforcement." SMF ¶ 51. The record also establishes that at the exact April 9, 2025 meeting where Plaintiff was silenced for criticizing an official, four other speakers explicitly named councilmembers in praise without facing any interruption. SMF ¶¶ 40–45.

Officer Robinson's individual actions are equally indefensible under clearly established law. He admitted that he never considered whether the order to physically mute and remove Plaintiff was constitutional before executing it. SMF ¶ 37. It was clearly established in this Circuit that public officials cannot use prohibitions on "personally directed remarks" or "abusive" to shield themselves from peaceful political critique in a public forum. *Moms for Liberty*, 118 F.4th at 1332–37. Accordingly, qualified immunity does not bar Count III against either Mayor Harris or Officer Robinson.

**V. The Court Should Issue Permanent Injunctive Relief on Counts I and II.**

A permanent injunction requires three showings: "(1) that [the plaintiff] has prevailed in establishing the violation of the right asserted in [her] complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005). Each element is satisfied here, and none is genuinely disputed.

Plaintiff has prevailed on the merits. As established in Parts IV.A and IV.B above, Plaintiff is entitled to summary judgment on both the facial and as-applied challenges. In *Moms for Liberty—Brevard County, FL v. Brevard Public Schools*, 118 F.4th 1324, 1333–38 (11th Cir. 2024), the Eleventh Circuit independently invalidated three materially identical provisions of the City's Policy. The City Council then ratified that conclusion as to its own ordinance, expressly finding that the provisions enforced against Plaintiff were "facially unconstitutional as applied and a violation of the First Amendment." SMF ¶¶ 57–58. And Mayor Harris's sworn admission that the sole basis for silencing Plaintiff was her utterance of a councilmember's name conclusively establishes the as-applied violation. SMF ¶¶ 35, 40–46. Plaintiff has therefore prevailed on liability.

There is no adequate remedy at law. Money damages cannot redress an ongoing First Amendment injury, because the harm is the continued suppression of protected speech rather than a quantifiable monetary loss. *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) ("an ongoing violation of the First Amendment constitutes an irreparable injury."). Only prospective relief can prevent the City from silencing Plaintiff again.

The City's February 2026 amendment does not eliminate the need for that relief, for two independent reasons. *First*, the amendment does not cure the constitutional defect—it entrenches it. The amended Policy retains the undefined "abusive" prohibition and adds a new "personally

directed abusive" category, reaching precisely the speech *Moms for Liberty* held the government may not burden. SMF ¶¶ 56–57, 60. A defendant cannot defeat injunctive relief by trading one unconstitutional restriction for another. *Second*, even a complete repeal would not moot the claim. Under the voluntary-cessation doctrine, a defendant's decision to discontinue challenged conduct moots a case only if the defendant carries the "heavy burden" of showing that the conduct "could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). The City cannot carry that burden. It refused Plaintiff's pre-suit request to suspend enforcement, SMF ¶ 55; it amended the Policy nearly a year after suit was filed, SMF ¶ 56; its final policymaker continues to defend the decision to silence Plaintiff, SMF ¶ 59; and the amended Policy preserves the very standardless discretion that produced the violation, SMF ¶¶ 11, 56–57, 60. Because the unconstitutional conduct remains fully capable of recurring, Plaintiff will continue to be subject to future harm absent an injunction.

Irreparable harm is presumed. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord FF Cosmetics*, 866 F.3d at 1298 (a First Amendment violation *constitutes* irreparable injury). Plaintiff's injury is not theoretical: she was chilled from speaking at Council meetings for more than ten months, from April 9, 2025 until February 11, 2026. SMF ¶ 62. The remaining equitable factors point the same way. The balance of equities and the public interest favor the protection of constitutional rights, and a municipality "has no legitimate interest in enforcing an unconstitutional ordinance." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006).

Accordingly, the Court should enter a permanent injunction enjoining enforcement of the unconstitutional provisions of § 2-60, as set forth in Plaintiff's prayer for relief.

## VI. The Court Should Issue Declaratory Relief on Counts I and II.

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To obtain declaratory relief, Plaintiff must establish "a substantial likelihood that [she] will suffer injury in the future." *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012). The controversy must be "real and immediate"—not "conjectural, hypothetical, or contingent"—and must present "a definite, rather than speculative threat of future injury." *Maloney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999). Both requirements are satisfied here.

The controversy is real and immediate. This dispute is anything but hypothetical. Plaintiff is a longtime Miami Gardens resident, community activist, and former Council candidate. SMF ¶ 1. She was actually silenced, muted, and physically removed from the April 9, 2025 Council meeting under the challenged Policy. SMF ¶¶ 32–39. The City Council has legislatively conceded that the provisions enforced against her are "facially unconstitutional as applied and a violation of the First Amendment." SMF ¶¶ 57–58. And the February 2026 amendment did not end the controversy: the amended Policy retains "abusive" and adds "personally directed abusive" as prohibited categories, perpetuating the very defects *Moms for Liberty* condemned. SMF ¶¶ 56–57. A live dispute thus remains over whether Plaintiff may name and criticize her elected officials during public comment.

Ms. Hunter Jackson faces a substantial likelihood of future injury. The threat that Ms. Hunter Jackson will be silenced again is concrete rather than speculative, and the City's own admissions establish it. Mayor Harris—the City's final policymaker for decorum enforcement—admits "countless examples of the arbitrary and inconsistent enforcement of the decorum policy"

from 2023 through 2025, SMF ¶ 51, and has testified that he stands by his decision to silence Plaintiff, SMF ¶ 59. The City's Rule 30(b)(6) representative concedes that the operative term "abusive" remain undefined and that enforcement is guided by the goal of conducting an orderly meeting." SMF ¶ 11. Because the amended Policy leaves that standardless discretion intact, the same officials remain free to apply the same undefined terms against Plaintiff the next time she addresses the Council. Her concrete past injury—a ten-month chilling of her protected speech, SMF ¶ 62—combined with the surviving defective Policy, supplies the "definite" and "real" threat of future injury.

Accordingly, the Court should declare that the challenged provisions of § 2-60 are facially unconstitutional and that the City's enforcement of those provisions against Plaintiff on April 9, 2025 was unconstitutional as applied, as set forth in Plaintiff's prayer for relief.

Plaintiff Karen Hunter Jackson respectfully requests that the Court grant partial summary judgment on liability as to Counts I, II, and III and award the following relief:

1. **Declaratory Relief.** A declaration that: (a) the City's pre-amendment Public Participation Policy is facially unconstitutional under the First and Fourteenth Amendments; (b) Defendants unconstitutionally applied the Policy against Plaintiff on April 9, 2025; (c) Mayor Harris's order silencing Plaintiff, and Officer Robinson's muting of her microphone and removal from the podium, violated Plaintiff's constitutional rights; and (d) Mayor Harris acted as the City's final policymaker in enforcing the Policy during Council meetings.
2. **Permanent Injunctive Relief.** An injunction prohibiting Defendants from: (a) enforcing the bans on "personal," "personally directed," or "abusive" remarks under Section 2-60;

(b) silencing, muting, interrupting, or removing speakers solely for naming City officials; and (c) enforcing decorum rules in a viewpoint-discriminatory manner.

3. **Damages.** Reserving all claims for compensatory, nominal, punitive, and other damages for trial.

4. **Further Relief.** Any other relief the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via CM/ECF to all parties on the attached Service List on May 19, 2026.

Respectfully submitted by,
PIERRE SIMON
Attorneys for Plaintiff
600 Southwest 4th Avenue,
Fort Lauderdale, Florida 33315

By: s/ Faudlin Pierre
Faudlin Pierre, Esq.
FBN. 56770
fplaw08@yahoo.com
(305) 336-9193